[Docket Nos. 35, 40]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

PHILLIP PELLA,

               Plaintiff,

     v.

ATLANTIC COUNTY DEPARTMENT OF
FAMILY AND COMMUNITY
DEVELOPMENT, NEW JERSEY
DEPARTMENT OF HUMAN SERVICES,
HELEN CHEATHAM, AUDREY
ALPHAEUS, JOHN/JANE DOES 1-10,

            Defendants.

Civil Nos. 25-13268 (RMB-EAP)
25-16933 (RMB-EAP)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge**

**THIS MATTER** comes before the Court upon the filing of a Third Amended Complaint, [Docket No. 40 ("Compl.")], and an amended application to proceed *in forma pauperis* ("IFP") by *pro se* Plaintiff Phillip Pella ("Plaintiff"). [Docket No. 35.] Plaintiff's IFP application establishes his financial eligibility to proceed without prepayment of the filing fee and will be **GRANTED**.[1] Plaintiff alleges that Defendants

---

[1] The Court notes that in his Complaint, Plaintiff makes mention of a monthly gift of $600 from his daughter for "personal storage costs," [Compl. at ¶ 31], which is not disclosed within his IFP application. While granting Plaintiff's IFP, the Court cautions him that the ability to proceed IFP is a privilege, not a right. *See Shahin v. Sec. of Del.*, 532 F.App'x 123, 123 (3d Cir. 2013) (citing *White v. Colo.*, 157 F.3d 1226, 1233 (10th

Atlantic County Department of Family and Community Development, New Jersey Department of Human Services, Helen Cheatham, Audrey Alphaeus, and John/Jane Does 1-10 violated federal law and wrongly denied him New Jersey Emergency Assistance ("EA") and Supplemental Nutrition Assistance Program ("SNAP") benefits [Compl. at 1-2.] For the reasons stated herein, the Court **DISMISSES** Plaintiff's Complaint.

## I.    SCREENING FOR DISMISSAL

When a person files a complaint and is granted IFP status, 28 U.S.C. § 1915(e)(2)(B) requires courts to review the complaint and dismiss claims that are: (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. Courts, however, must liberally construe pleadings that are filed *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The legal standard for dismissing a complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), is the same as that for dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual

_____

Cir. 1998)). Should the Court find concern with Plaintiff's disclosures, or lack thereof, as the matter proceeds, it will exercise its discretion to revoke Plaintiff's IFP status. *Id.*

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although entitled to liberal interpretation, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)). "Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## II.    FACTUAL BACKGROUND

Plaintiff, a resident of Atlantic County, New Jersey, was laid off due to the COVID-19 Pandemic and became disabled on June 15, 2020, following what he describes as "a loss from suicide." [Compl. at ¶ 13.] Plaintiff then applied for Social Security Disability Insurance in August 2021. [*Id.* at ¶ 14.] He began receiving General Assistance under Work First New Jersey ("WFNJ") and SNAP benefits in September 2021. [*Id.* at ¶ 16.]

On April 10, 2022, Plaintiff applied for EA benefits through WFNJ in response to a notice of eviction he received due to nonpayment of rent for two months. [*Id.* at ¶ 17.] His application was denied on May 16, 2022, and Plaintiff successfully appealed on March 30, 2023. [*Id.* at ¶ 18.] Plaintiff then reapplied for EA benefits on May 10, 2023, but was denied on the grounds that he was "overhoused" based on an increase in calculated rent and a refusal to downsize his housing from three bedrooms to one.

3

[*Id.* at ¶ 22 (citing Pl. Ex. D).] Plaintiff again appealed and the denial was upheld on June 28, 2023. [*Id.* at ¶ 23.]

On June 29, 2023, Plaintiff submitted a third application for EA benefits via email. [*Id.* at ¶ 24.] He claims to have never received a determination on his application within the statutory timeframe and requested additional verification on August 8, 2023. [*Id.*] He further claims his requests for an emergency fair hearing concerning this delay were ignored. [*Id.* at ¶ 25.] Plaintiff was evicted on August 14, 2023, and his tenancy was terminated on September 6, 2023. [*Id.* at ¶ 27.] Plaintiff states this eviction rendered him homeless. [*Id.* at ¶ 30.]

On August 18, 2023, Plaintiff received a fully favorable decision from the Social Security Administration declaring him disabled as of June 15, 2020. [*Id.* at ¶ 28 (citing Pl. Ex. G).] He received his first Social Security payment in October 2023 and claims that it is due to these payments that Defendants denied his reapplication for EA benefits. [*Id.* at ¶ 28-29.] Despite his self-characterization as homeless, Plaintiff has been living in "temporary shelter" for which he pays "out of pocket" using his Social Security benefits. [*Id.* at ¶ 31.]

In January 2024, Plaintiff's SNAP benefits were reduced following notification of his increased Social Security income consistent with regulatory guidelines. [*Id.* at ¶ 32 (citing Pl. Ex. H).] Plaintiff disagrees with this reason and instead believes that Defendants purposely applied a gross income standard rather than the net income standards applied to disabled households. [*Id.* at ¶ 33-34 (citing Pl. Ex. I, J).]

Plaintiff has also referenced an ongoing state criminal prosecution following his alleged theft of a "Harrah's Casino slot machine voucher in the amount of $2,005.50" belonging to another patron which he claims the State has brought against him in retaliation for his Benefits claims. [*Id.* at ¶ 42 (citing Pl. Ex. K).] He also included the mention of State Appellate Actions he has currently pending against Defendants. [*Id.* at ¶ 43.]

## III.   PROCEDURAL BACKGROUND

Plaintiff submitted his initial Complaint without paying the $350 filing fee and $55 administrative fee nor did he submit an IFP application on July 14, 2025. [Docket No. 1.] He was instructed to either submit the fee or a completed IFP application by the Clerk's Office the same day. [Docket No. 3.] Plaintiff submitted an Amended Complaint and IFP application on July 22, 2025. [Docket Nos. 5, 6.]

Prior to the screening of Plaintiff's IFP application, Defendants filed a Motion to Dismiss. [Docket No. 11.] Plaintiff submitted several briefs in opposition, [Docket Nos. 12, 13, 17], however, Defendants' Motion was terminated by the Court as premature on August 25, 2025. [Docket No. 30.]

Plaintiff then filed a Second Amended Complaint on September 26, 2025. [Docket No. 32.] He also filed a Motion for a Preliminary Injunction on October 10, 2025. [Docket No. 33.] The Court screened Plaintiff's Second Amended Complaint and IFP application, finding it to be deficient and advised Plaintiff to submit a "new application, in full, with necessary details and explanations" within thirty days on October 28, 2025. [Docket No. 34.] The matter was then dismissed without prejudice,

pending Plaintiff's submission. [*Id.*] Plaintiff submitted his second IFP application on October 29, 2025, [Docket No. 35], and a Third Amended Complaint ("Complaint") on November 10, 2025. [Docket No. 40.]

## IV.    ANALYSIS

### A.    Plaintiff's Motion to Consolidate

Within his Complaint, Plaintiff moves to consolidate this action with Civil Action No. 25-16933 that he also has pending before this Court as well as his related State Appellate matters. [Compl. at 7.]

Under Federal Rule of Civil Procedure 42(a), when multiple actions pending before the Court present a common question of law or fact, the Court has discretion to: "(1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a)(1)–(3). The Third Circuit has explained that Rule 42 grants district courts substantial authority—either upon motion of a party or *sua sponte*—to consolidate cases for trial where doing so would promote judicial efficiency and the orderly administration of justice. *See Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964). The Court may also invoke this authority when consolidation would "avoid unnecessary costs or delay." *Skoorka v. Kean Univ.*, No. 16-3842, 2019 WL 4509294, at *3 (D.N.J. Sept. 19, 2019) (internal quotation marks omitted).

Importantly, consolidation does not combine separate cases into a single action, alter the substantive rights of the parties, or render parties in one case parties in another. *In re Only. Bank of N. Va.*, 418 F.3d 277, 298 n.12 (3d Cir. 2005) (citations and

internal quotation marks omitted). In evaluating whether consolidation is appropriate, the Court recognizes that the actions need not be mirror images of one another; it is sufficient that they share "common question[s] of law or fact." *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998). As the Third Circuit has noted, "[t]he purpose of consolidation is 'to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues.'" *In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999) (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 158 F.R.D. 562, 571 (S.D.N.Y. 1994)).

Plaintiff asserts that consolidation is warranted because this matter and Civil Action No. 25-16933 involve overlapping parties, similar allegations concerning the administration of public assistance benefits, and related state appellate proceedings. [Compl. at 7.] He further contends that consolidation would promote efficiency and address what he characterizes as "urgent humanitarian circumstances." [*Id.*]

After reviewing both matters, the Court notes that not only are these actions substantially similar, but identical. It appears that Plaintiff initiated Civil Action No. 25-16933 the day this Court denied his Second Amended Complaint and has been concurrently filing identical documents in both matters since. Therefore, in the interest of judicial economy, the Court will dismiss the earlier filed case and there is no need to consolidate. As to the State appeals, this Court has no authority to consolidate a state action. As Rule 42(a) applies only to actions that are pending before it, the Court lacks authority to consolidate federal actions with state court proceedings that remain

7

outside its jurisdiction. *See Fata v. Bayonne N.J. Bd. of Educ.*, No. 24-9258, 2024 U.S. Dist. LEXIS 190095, at *3 (D.N.J. Oct. 18, 2024) (citations omitted).

## B. Plaintiff's Section 1983 Claim (Counts I and VI)

Section 1983 imposes liability on individuals who deprive a person of a federal constitutional or statutory right "under color of any statute, ordinance, regulation, custom, or usage" of a state. 42 U.S.C. § 1983. Section 1983's "under color of law" requirement is the "equivalent of state action." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) ("The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982))). Thus, to avoid dismissal of his Section 1983 claim, Mr. Pella must plead enough facts to show that he suffered a deprivation of a federal constitutional or statutory right by a state actor. *Leshko*, 423 F.3d at 339.

### 1. State Action

In his Complaint, Plaintiff names The State of New Jersey and several various State Agencies and Employees as Defendants. [Compl. at 1.] The conduct that gave rise to the instigation of this suit concerns the administration of benefits through the following programs: WFNJ, EA, and SNAP; and related fair-hearing determinations, as well as a criminal prosecution. [*Id.*] The Court is satisfied that Plaintiff has alleged sufficient facts to support state action at this stage as all Defendants are either the State of New Jersey or a State Administrative Agency. Thus, the inquiry now turns to

8

whether Plaintiff has plausibly alleged the deprivation of a Constitutional right. *Leshko*, 423 F.3d at 339.

### 2.    Deprivation of a Protected Property Interest

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (citations and internal quotations omitted); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006). Assuming, *arguendo*, that Plaintiff possessed a protected property interest in the public benefit assistance he claims he qualifies for, the Complaint fails to plausibly allege the absence of adequate process. Plaintiff acknowledges that he pursued administrative review, underwent multiple hearings, and received several Final Agency Decisions. [Compl. at ¶¶ 18-20, 23, 25, 39-42, 46.] He further references ongoing appellate proceedings in New Jersey Superior Court. [Compl. at ¶ 43.] The availability of administrative and judicial review for Plaintiff's claims strongly undermines any argument that he was deprived of procedural due process. *See DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995) (overruled on other grounds by *United Artists Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003)).

At most, Plaintiff has alleged delay, adverse determinations, and personal disagreement with regulatory interpretations. Such allegations, even when taken as true, are not sufficient to establish that the procedures were constitutionally

inadequate. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). Due process guarantees notice and an opportunity to be heard, not a favorable outcome. *Id.*

### 3.    Substantive Due Process

Plaintiff also characterizes Defendants' conduct as arbitrary, willful, and retaliatory. Public assistance benefits are statutory entitlements, *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970), not fundamental rights deeply rooted in this Nation's history and tradition. *See Wash. v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Further, allegations of regulatory misapplication, delay, or incorrect determinations do not rise to the level of shock to the conscience required to proceed on a substantive due process claim. *See e.g.*, *Miller v. City of Phila.*, 174 F.3d 368, 375-76 (3d Cir. 1999) (Conduct that violates substantive due process must rise beyond "both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'"); *J.R. v. Lehigh Cty.*, 534 F.App'x 104, 108 (3d Cir. 2013) ("[O]nly the most egregious conduct violates substantive due process.") Therefore, the facts alleged do not plausibly demonstrate conduct of the magnitude required to sustain a substantive due process claim.

### 4.    Equal Protection

Plaintiff alleges that he is disabled and that Defendants improperly calculated his SNAP eligibility by applying gross income standards rather than net income standards applicable to disabled households. [Compl. at ¶ 33 (citing Pl. Ex. I).] The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const amend. XIV, § 1. In

essence, it requires that individuals who are similarly situated be treated the same. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A plaintiff may pursue an Equal Protection claim under two distinct theories: the traditional approach or the class-of-one theory. As Plaintiff is *pro se* and has not explicitly pled his theory, the Court analyzes both pathways.

Under the traditional approach, "[t]o prevail on [an] equal protection claim, [a plaintiff] must show that the Government has treated [him] differently from a *similarly* situated party *and* that the Government's explanation for the differing treatment does not satisfy the relevant level of scrutiny." *Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338, 348 (3d Cir. 2017) (emphasis in original). Additionally, "[t]o state an equal-protection claim, Plaintiffs must allege (and ultimately prove) 'intentional discrimination.'" *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015) (quoting *Washington v. Davis*, 426 U.S. 229, 241 (1976)). "[M]ere unequal treatment or adverse effect" does not suffice. *Jewish Home of E. PA v. Centers for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (citing *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)). Instead, the plaintiff "must show that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects." *Id.* (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985) (internal quotation marks omitted)).

Under the class-of-one theory, a plaintiff need not belong to a protected class to assert an equal protection claim. Rather, he must establish that the defendants

intentionally subjected him to differential treatment, compared with similarly situated individuals, in a manner that was irrational. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). To succeed in a class-of-one claim, the plaintiff must show that: (1) he was treated differently from others who were similarly situated; (2) the disparate treatment was intentional; and (3) no rational basis justified the difference. *Hill*, 455 F.3d at 239.

Regardless of which theory Plaintiff intends to pursue, this claim fails. The Complaint does not identify similarly situated, non-disabled individuals who were treated more favorably, nor does it allege facts supporting a plausible inference of discriminatory intent. Rather, Plaintiff's allegations concern disputes over regulatory interpretation and eligibility calculations. [Compl. at ¶ 33-34 (citing Pl. Ex. I, J).] Conclusory assertions of discrimination without a supporting factual basis are insufficient under *Iqbal*. 556 U.S. at 678. Plaintiff therefore fails to plead an Equal Protection claim.

### 5.    Retaliation

Plaintiff further alleges that subsequent benefit denials and the initiation of a seemingly unrelated criminal prosecution were done in "retaliation", although Plaintiff does not offer any further explanation. [Compl. at ¶¶ 20, 42.]

Even after liberally reading the Complaint, the Court finds it devoid of allegations identifying protected activity that would give rise to the alleged retaliation, nor does it plead facts supporting a plausible causal connection beyond conclusory assertions. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting

12

*Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)). Absent factual allegations establishing protected conduct and causation, Plaintiff has failed to plead a claim of retaliation. Fed. R. Civ. P. 12(b)(6).

### 6.    Plaintiff Has Failed to Plead a Section 1983 Claim

Although Plaintiff has adequately alleged that Defendants acted under color of law, he has not plausibly alleged the deprivation of a Constitutional or Statutory right. Accordingly, Plaintiff's Section 1983 claims are dismissed pursuant to Rule 12(b)(6).

### C.    Plaintiff's Fair Housing Act and Americans with Disabilities Act Claims (Counts VII and X)

Plaintiff asserts claims under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. [Compl. at 7.] Both claims arise from Defendants' administration of Emergency Assistance ("EA") and related public benefits, including a determination that Plaintiff was "overhoused." [Compl. ¶ 22.] The Court addresses these claims together.

Under the FHA, it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap," or "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f). Further, "[t]he ADA . . . prohibits public entities from discriminating generally against any 'qualified individual with a disability,' including with respect to housing." *Oxford House, Inc., v. Twp. of N. Bergen*, 158 F.4th 486, 491 (3d Cir. 2025) (quoting 42 U.S.C. § 12132).

"Thus, to prevail on a discrimination claim under either the FHA or the ADA, [Plaintiff] must ultimately prove two elements: (1) that [he has] a 'handicap' or a 'disability' as those terms are statutorily defined; and (2) that [Defendants] discriminated against [him] on the basis of such handicap or disability." *Id.*

Even after liberally construing the Complaint, Plaintiff failed to state a claim under the FHA. The scope of the FHA is narrow and only regulates discriminatory practices in the sale, rental, or making unavailable of dwellings. 42 U.S.C. §§ 3602(i), 3604(a)-(b). The conduct Plaintiff seeks to challenge involves the administration of state emergency assistance benefits. [Compl. at 1-2.] The Court could not glean facts from its reading of the Complaint that allege that Defendants refused to rent him a dwelling, imposed discriminatory rental terms, or otherwise acted as housing providers. Nor does he plead facts suggesting that the determination that he was "overhoused" or that he was denied a housing opportunity because of his disability. The mere allegation that an EA eligibility determination was erroneous or improperly calculated does not convert a dispute over public assistance benefits into a claim of housing discrimination under the FHA. Therefore, the Court cannot draw a reasonable inference from the Complaint that any housing determinations were made with discriminatory animus towards Plaintiff. *Iqbal*, 556 U.S. at 678.

Plaintiff's ADA claim fares no better. Title II of the ADA states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

For the purpose of screening the Complaint, the Court assumes Plaintiff has a qualified disability. [Compl. ¶ 28 (citing Ex. G).] The issue thus becomes whether the Complaint plausibly alleges the denial or delay of state benefits occurred "by reason of" his disability. 42 U.S.C. § 12132. Even after liberally reading the Complaint, the Court concludes it does not plausibly allege that the denial of benefits occurred by reason of Plaintiff's disabilities. The SNAP denial notice explains the gross income calculation that was done in computing the determination, leading the Court to conclude that Plaintiff's denial was based on statutory income thresholds. [Pl. Ex. I.] Beyond this Exhibit, Plaintiff has failed to proffer any facts showing the denial was due to his disability status nor does the Complaint allege that Plaintiff requested and was denied reasonable housing accommodation.

Despite referencing disability related hardships and homelessness, Plaintiff does not identify a specific modification to policy or procedure that was sought and refused. At most, the Complaint alleges that Defendants incorrectly applied the correct regulations to his case. [Compl. at ¶ 33-34.] Allegations of regulatory error, without showing that the alleged error was disability-based or the byproduct of intentional discrimination, are not sufficient to plead an ADA claim. *See S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262-63 (3d Cir. 2013). While Plaintiff has alleged serious hardship and prolonged homelessness, the FHA and ADA claims as presently pleaded fail to allege discrimination within the meaning of the statutes. Fed. R. Civ. P. 12(b)(6).

**D.    Count VIII – Civil Rights Act of 1964**

Plaintiff asserts a claim under the Civil Rights Act of 1964, specifically Titles II and VI. [Compl. at 6.] This claim too appears to arise from Defendants' administration of state benefits and alleged discriminatory treatment in connection with these programs.

Title II prohibits discrimination in places of public accommodation on the basis of "race, color, religion, or national origin." 42 U.S.C. § 2000a(a). This statute applies to places such as hotels, restaurants, theatres, and other similar facilities engaged in interstate commerce. 42 U.S.C. § 2000a(b). It does not apply to state agencies administering public assistance programs. *See e.g. K.J. v. Div. of Youth & Family Servs.,* 363 F. Supp 2d 728, 750 (D.N.J. 2005) (finding DYFS did not qualify as a place of public accommodation as "place of public accommodation . . . refers to facilities maintained for the use of [the] general public," rather than merely the "services provided by a state agency."). Further, Plaintiff has only alleged discrimination on the basis of his disability, not his race, color, religion or national origin. [Compl. at 8-9.] Such allegations fall outside the scope of Title II.

Title VI provides "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Although Plaintiff makes general references to federal funding and attaches program notices that include non-discriminatory language, [Pl. Ex. I], he fails to allege that he is a member of a class protected by this

16

statute or that any adverse action was taken against him on the basis of said protected class. Similar to Title II, Title VI does not encompass disability-based discrimination and therefore has not been adequately pled. Fed. R. Civ. P. 12(b)(6).

### E.    Count IX – Rehabilitation Act § 504

Plaintiff also asserts a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. [Compl. at 6.] This claim too is based on the denial of state benefits and "overhoused" determination. For the reasons below, as presently pleaded, this claim fails the established pleading standard.

Section 504 states: "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of [their] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

Relying on the Favorable Decision Plaintiff received from the Social Security Administration finding him to be disabled as of June 15, 2020, the Court considers Plaintiff to have a qualifying disability for the purposes of screening the Complaint. [Pl. Ex. G.] For screening purposes only, the Court also proceeds under the assumption that the administration of the EA and SNAP benefits constitutes an activity or program that receives federal financial assistance within the meaning of the statute.

With these assumptions in mind, the dispositive issue becomes whether Plaintiff has plausibly alleged that he was denied benefits solely by reason of his disability. 29 U.S.C. § 794(a).  The Complaint recounts a series of adverse determinations, including

the May 2023 "overhoused" finding, subsequent Final Agency Decisions, delays in processing applications, and SNAP eligibility determinations based on income calculations. [Compl. at 3-5.] Plaintiff also included several notices from the Atlantic County Department of Family and Community Development that state his benefits determinations were made in accordance with the appropriate State regulatory provisions governing income thresholds and program eligibility. [Pl. Ex. D, H, I.] While Plaintiff vigorously disputes those determinations, the factual allegations describe mere personal disagreements rather than disability-based exclusions.

The Rehabilitation Act requires that the alleged exclusion or denial solely occur by reason of the plaintiff's disability, which Plaintiff has failed to properly allege. There are no allegations that non-disabled applicants were treated more favorably under identical circumstances nor of discriminatory statements, policies, or refusal to modify procedures in response to a specific accommodation request. Although Plaintiff references internal training materials advising against the abuse of adverse outcomes, [Pl. Ex. J], the mere existence of these materials does not demonstrate that the challenged decisions were motivated by disability discrimination.

Plaintiff also failed to allege that reasonable accommodation was denied. A failure to accommodate theory under Section 504 requires factual allegations that (1) a requested accommodation was necessary to afford equal access and (2) such accommodation was denied. *See Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 114-15 (3d Cir. 2018). The Complaint contains no such allegations. Rather, Defendants' eligibility determinations are characterized as willful, erroneous, or

18

retaliatory. Assuming, *arguendo*, these characterizations to be true, they still fail to establish disability-based discrimination.

While Plaintiff alleges serious hardship and homelessness, the Rehabilitation Act does not provide a remedy for every alleged regulatory error in the administration of public benefits. *See S.H.*, 729 F.3d at 263 (Section 504 requires a "deliberate choice, rather than negligence or bureaucratic inaction") (citations omitted). As the Complaint fails to plead facts demonstrating any of the denials Plaintiff references occurred solely by reason of his disability, he has failed to adequately plead this claim. Fed. R. Civ. P. 12(b)(6).

### F.    Plaintiff's State Law Claims (Counts II, III, IV, and V)

In addition to his claims arising under federal law, Plaintiff asserts several state law claims under the New Jersey Civil Rights Act (Count II); Gross Negligence, Reckless Endangerment and Willful Misconduct (Count III); Harassment and Abuse of Governmental Processes (Count IV); and Malicious Prosecution and Retaliation (Count V). [Compl. at 6.]

The Court has determined that Plaintiff has failed to properly plead any of his federal claims in this matter. Thus, with no properly pled federal claims appearing on the face of Plaintiff's Complaint and no other basis for this Court's original jurisdiction, the Court declines to exercise supplemental jurisdiction over any state law claims at this time. 28 U.S.C. § 1367(c)(3). The Court finds no extraordinary circumstances warranting an exercise of supplemental jurisdiction over those claims. *Hedges v. Musco*, 204 F.3d 109, 123-24 (3d Cir. 2000) (affirming district court's decision not to exercise

supplemental jurisdiction over state law claim after all federal claims were dismissed and noting that district court "must decline to decide [] pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."). Plaintiff is free to bring such claims in state court, although this Court makes no finding as to the merits or procedural posture of such claims.

### G.    Lack of Jurisdiction to Grant Relief Sought

The Court cautions Plaintiff that even assuming he files a properly Amended Complaint, the Court lacks jurisdiction to grant some of the relief sought. Namely, the Court cannot enjoin or otherwise interfere with ongoing State prosecutions; mandate training for State agencies; or award Plaintiff State benefits. *See Ex parte Young*, 209 U.S. 123 (1908); *see e.g. Jones v. Connell*, 833 F.2d 503, 505 (3d Cir. 1987) (federal courts are "barred by the eleventh Amendment from ordering . . . state officials to conform their conduct to state law").

### H.    Exhaustion of Administrative Remedies

Further, to the extent Plaintiff asks this Court to address State Agency benefit determinations, the Court addresses the threshold issue of exhaustion of administrative remedies. It is well settled that where a statutory scheme provides a comprehensive administrative review process, the plaintiff must pursue and complete that process *before* seeking judicial intervention. *See McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992). This principle provides agencies the ability to apply their expertise,

20

develop a factual record, correct their own errors, and promotes judicial economy by potentially preventing the need for judicial involvement. *Id.*

As this pertains to Plaintiff's claims, New Jersey's public assistance framework provides a structured administrative process for challenging adverse determinations. An applicant who is denied EA benefits is entitled to request a fair hearing before the Office of Administrative Law, followed by the issuance of a Final Agency Decision by the Department of Human Services. *See* N.J.A.C. 10:90-9.1 *et seq.* Judicial review of the Final Agency Decision lies exclusively with the Superior Court of New Jersey's Appellate Division. N.J. Ct. R. 2:2-3(a)(2).

The record Plaintiff included with his Complaint reflects that he did, at various times, pursue fair hearings and obtained Final Agency Decisions as it relates to his EA benefits. [Pl. Ex. B, D.] He then pursued the appropriate avenue of review via direct appeal in the New Jersey Appellate Division. [Pl. Compl. at ¶¶ 39, 41, 43.] However, to the extent his appeal remains pending, this Court does not sit as a super-appellate tribunal to review or overturn state administrative determinations. *See O'Neill v. City of Phila.*, 32 F.3d 785, 792 (3d Cir. 1994); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Accordingly, this Court cannot re-adjudicate Plaintiff's benefits determinations or award retroactive benefits as though exercising appellate jurisdiction over the State agency. *See Jones*, 833 F.2d at 505.

The same analysis applies to Plaintiff's SNAP benefits claims. Federal law requires that someone dissatisfied with a SNAP eligibility determination be afforded notice and an opportunity for a fair hearing. *See* 7 U.S.C. § 2020(e)(10).  New Jersey

regulations similarly provide for administrative review of adverse SNAP determinations. *See* N.J.A.C. 10:87-8.1 *et seq.* The SNAP denial notices attached to the Complaint expressly advise Plaintiff of his right to request a fair hearing within ninety days. [Pl. Ex. H, I.] Although the Complaint references his disagreement with the income calculations and benefit reductions, even when liberally read, it does not clearly allege that Plaintiff completed the fair hearing process and received a Final Agency Decision with respect to each challenged SNAP determination.

Absent such a showing, judicial review of those benefit determinations is premature. Conversely, if Plaintiff did exhaust the administrative remedies and received a Final Agency Decision regarding his SNAP benefits, his avenue for review lies within the New Jersey Appellate Division, not this Court. N.J. Ct. R. 2:2-3(a)(2).

## V.    CONCLUSION

For the reasons stated above, the Court will **GRANT** Plaintiff's IFP application, **DENY** Plaintiff's Motion for Consolidation, and **DISMISS** his Complaint **WITHOUT PREJUDICE**. An appropriate Order follows.

**February 25, 2026**                                      **s/Renée Marie Bumb**
Date                                                                      RENÉE MARIE BUMB
                                                                              Chief United States District Judge